[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12613
_____

D.C. Docket No. 3:09-cv-00894-HES-JRK


INTERVEST CONSTRUCTION OF JAX, INC.,
et. al.

Plaintiffs-Appellants,


versus


GENERAL FIDELITY INSURANCE COMPANY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 28, 2014)

Before CARNES, Chief Judge, TJOFLAT, Circuit Judge, and MICKLE,* District
Judge.

---

* The Honorable Stephan P. Mickle, United States District Judge for the Northern District of
Florida, sitting by designation.  Judge Mickle did not participate in the decision; it is rendered by
quorum.  See 28 U.S.C. § 46(d) (2012).

PER CURIAM:

## I.

The controversy in this case is between an insurer, General Fidelity Insurance Company, and its insureds, Intervest Construction of Jax, Inc. and ICI Homes, Inc. (collectively "ICI"), regarding whether General Fidelity breached its obligations under a general liability insurance policy held by ICI.

The coverage dispute at issue arose from a personal injury suit brought against ICI by Katherine Ferrin, who purchased and lived in a home built by ICI. During the construction of Ferrin's residence, ICI hired Custom Cuttings, Inc. to install the attic stairway. Pursuant to its subcontract with ICI, Custom Cuttings agreed to indemnify ICI from any damages or claims brought against ICI as a result of Custom Cuttings's negligence. In April 2007, Ferrin received serious injuries from a fall while using the attic stairs installed by Custom Cuttings. She brought suit solely against ICI. In turn, ICI sought indemnification from Custom Cuttings pursuant to the terms of their subcontract. At the time of Ferrin's accident, ICI held a general liability insurance policy with General Fidelity (the "General Fidelity Policy") and Custom Cuttings held a general liability insurance policy with North Pointe Insurance Company.

2

The terms of the General Fidelity Policy included a Self-Insured Retention endorsement ("the SIR endorsement"), requiring ICI to pay $1 million towards its own losses before General Fidelity had a duty to defend or indemnify ICI for any occurrence or event.[1]  The General Fidelity Policy also contained a transfer-of-rights provision giving General Fidelity subrogation rights over certain ICI claims.[2]

On July 7, 2009 a mediation was held involving Ferrin, ICI, Custom Cuttings, General Fidelity, and North Pointe.  As a result of this mediation, a settlement agreement was reached wherein ICI and General Fidelity agreed to pay Ferrin $1.6 million as full and final settlement of her claims against ICI, Custom Cuttings, General Fidelity, and North Pointe.  As indemnity, Custom Cuttings and North Pointe agreed to pay $1 million (the "Custom Cuttings Payment") to ICI and General Fidelity in exchange for a release from any liability arising under the Ferrin lawsuit.

A dispute arose between ICI and General Fidelity regarding to whom the Custom Cuttings Settlement Payment should be payable and whether ICI could use

---

[1] The full text of the SIR endorsement can be found at <u>Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.</u>, 662 F.3d 1328, 1333–35 (11th Cir. 2011).

[2] The transfer-of-rights provision found in the General Fidelity Policy reads as follows:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

the Custom Cuttings Payment to satisfy the SIR endorsement.  In order to resolve Ferrin's claim, ICI and General Fidelity tabled their dispute and agreed to release the Custom Cuttings Payment—which was being held in trust—to Ferrin and to each fund $300,000 towards the $1.6 million settlement agreement.  Both ICI and General Fidelity reserved all claims and defenses against one another with respect to the coverage provided by the General Fidelity Policy.

## II.

After the full $1.6 million settlement payment was delivered to Ferrin, ICI filed suit in the Circuit Court of the Fourth Judicial Circuit of Florida against General Fidelity for breach of contract, requesting a declaratory judgment that its claim to the Custom Cuttings payment is superior to General Fidelity's and that it is entitled to apply the Custom Cuttings payment towards the SIR endorsement in the General Fidelity Policy.  General Fidelity removed the case to the United States District Court for the Middle District of Florida.

After hearing arguments, the District Court found in favor of General Fidelity, concluding that ICI had not satisfied the SIR obligation because the payment had originated from another party.  Intervest Constr. of Jax, Inc., v. Gen. Fid. Ins. Co., No. 3:09-cv-00894-HES-JRK, Order at 8 (M.D. Fla. Apr. 22, 2010).  On appeal, we determined that the resolution of this dispute depends on unanswered questions of Florida law.  Intervest Constr. of Jax, Inc., v. Gen. Fid.

4

Ins. Co., 662 F.3d 1328, 1332 (11th Cir. 2011).  In light of the absence of controlling precedent from the Supreme Court of Florida, we certified two questions for resolution:[3] "1) Does the General Fidelity Policy allow the insured to apply indemnification payments received from a third-party towards satisfaction of its $1 million Self-Insured Retention? [and] 2) Assuming that funds received through an indemnification clause can be used to offset the Self-Insured Retention, does the transfer of rights provision found in the General Fidelity Policy grant superior rights to be made whole to the insured or to the insurer?"  Id.

On February 6, 2014 the Supreme Court of Florida issued a decision answering both of these questions.  Intervest Constr. of Jax, Inc., v. Gen. Fid. Ins. Co., No. SC11-2320 (Fla. 2014).  In its decision, the Supreme Court of Florida concluded that (1) "the General Fidelity policy allows the insured to apply indemnification payments received from a third party towards satisfaction of its $1 million self-insured retention," id. at *19, and (2) "the transfer of rights provision in the policy does not abrogate the made whole doctrine, thereby preserving ICI's right of priority," id. at *25.

In light of the Supreme Court's answers, the final judgment of the District Court is

---

[3] The Florida Constitution allows the Florida Supreme Court to consider a certified question if it "is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida."  Fla. Const. art. V, § 3(b)(6); see also Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 904 (11th Cir. 2007).

REVERSED.