# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————————

Case No. 5D22-1404
LT Case No. 2019-30212-CICI

———————————————————

STATE FARM FLORIDA
INSURANCE COMPANY,

    Appellant,

    v.

JORETHA M. JAMES,

    Appellee.

———————————————————

On appeal from the Circuit Court for Volusia County.
Dennis Craig, Judge.

C. Ryan Jones and Scot E. Samis, of Traub Lieberman Straus &
Shrewsberry, LLP, St. Petersburg, for Appellant.

Mark A. Nation, of The Nation Law Firm, LLP, Longwood, and
Marisa Glassman, of Morgan & Morgan, Tampa, for Appellee.

December 1, 2023

PER CURIAM.

    The legal issue presented is the meaning of the word "incur"
in a so-called tear out clause in a homeowners policy issued by
State Farm Florida Insurance Company. Joretha M. James, the
policy holder, successfully sued State Farm for water damage to
her home plus the cost of tearing out portions of the home to
access the location of the water intrusion in the plumbing system.

The trial court rejected State Farm's argument that James did not "incur" the tear out costs as that term is used in the policy. State Farm now appeals.

The parties agree on the facts in this case, including the amount of tear out costs ($38,834.28) as determined by State Farm's appraisal. State Farm does not dispute it must pay these costs. It claims, however, that its policy does not authorize payment of the invoice because the repair contract that James entered with the contractor was "illusory" because James could cancel it at any time. State Farm frames the issue on appeal as "Whether an insured 'incurs' an expense by signing a contract that can be voided by the insured." The policy language is as follows:

> 13. **Tear Out.** If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost *you incur* to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped.

(Emphasis added). The key question is whether the word "incur" favors State Farm's interpretation (that an insured must enter a repair contract the insured cannot void) or the insured's interpretation (that she has incurred the loss for which reasonable repair costs are due and payable as reflected by the contract and appraisal amount). The trial court agreed with James and entered summary judgment in her favor.

In deciding this case, the standard of appellate review is de novo, meaning we need not defer to the trial court's interpretation and, instead, we perform our own independent legal analysis. *See Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1296 (Fla. 2011) ("The issue in this case stems from a trial court's ruling on summary judgment based upon the interpretation of an insurance contract which causes our standard of review to be de novo."). In doing so, we must determine if the plain meaning of the wording of the tear out clause is clear and unambiguous; if so, our work is done, if not we labor on.

2

We begin by noting two key points. First, the policy was drafted by State Farm, which failed to include a definition of the meaning of the word "incur," thereby leaving it open to potentially different meanings. Because "incur" is not defined, "'it should be given its plain and ordinary meaning" in the context presented. *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (quoting *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015)).

Secondly, because State Farm drafted the policy, it will be construed against the insurer if two or more reasonable interpretations exist. *See Botee*, 162 So. 3d at 186 (observing that a policy is ambiguous when its "language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage"). An ambiguity "must be liberally construed in favor of coverage and strictly against the insurer." *Macedo*, 228 So. 3d at 1113 (quoting *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013)).

State Farm's primary argument is that the meaning of "incur" in its policy includes an implicit, unwritten requirement that an insured must sign a repair contract that contains no opportunity for cancellation. State Farm concedes that this gloss on the meaning of "incur" is not specifically set out in its policy. Indeed, an insured would have no warning that such a requirement exists until the denial of its claim on this basis. As such, the plain meaning of "incur" as used in State Farm's policy does not contain even a hint that an insured's contract must be non-voidable before payment will be allowed. State Farm's interpretation simply adds an undisclosed requirement that the policy language does not support. *See State Farm Fla. Ins. Co. v. Crispin*, 290 So. 3d 150, 152 (Fla. 5th DCA 2020) ("[W]e are mindful that we may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" (quoting *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014))).

In further support of its position, State Farm relies on *Ceballo v. Citizens Property Insurance Corp.*, 967 So. 2d 811 (Fla. 2007), in which the supreme court noted that the insurer had

conceded that to "incur" an expense "means to become liable for the expense, *but not necessarily to have actually expended it.*" *Id.* at 815 (emphasis added). As the highlighted language suggests, *Ceballo*, rather than supporting State Farm's position, cuts in the other direction. The issue in *Ceballo* was whether the insured had to prove that it incurred a loss to be entitled to the payment of supplemental insurance benefits (up to 25% of the primary policy). The supreme court agreed with the Third District, both of which required the insured to show that it had become liable for and thereby incurred the expenses for which it sought recovery. The underlying logic is that where the amount of coverage depends on the amount of the loss, the insured must demonstrate the extent of the actual loss incurred but need not actually expend funds to be entitled to payment from an insurer.

No dispute exists that James demonstrated an actual loss and is entitled to tear out costs of $38,834.28, an amount established by the appraisal; the existence and amount of the loss sustained are clearly established. As in *Ceballo*, James does not have to actually expend funds on a loss to be entitled to insurance proceeds. Nothing in the State Farm policy says that James is required to expend her own funds (or get a loan) to pay for tear out costs before she is entitled to seek and receive payment. The policy could have been written to say that State Farm would reimburse "the reasonable costs *you have paid* for tear out" repairs, but it was not. *Compare State Farm Fla. Ins. Co. v. Phillips*, 134 So. 3d 505 (Fla. 5th DCA 2014) (holding that because a policy expressly allowed it, State Farm could withhold payment of benefits until a homeowner contracted for the repair of subsurface sinkhole damages) *with State Farm Fla. Ins. Co. v. Nichols*, 21 So. 3d 904 (Fla. 5th DCA 2009) (reaching the opposite result in a case where the policy contained no such provision).

State Farm also argues that "incur" means that a policy holder must be "liable" for the tear out costs, even if State Farm denies coverage. That too would require adding language and meaning beyond the common understanding of the tear out clause. The contract at issue allowed James to void the contract if State Farm denied coverage, which is a commonsense safeguard to protect insureds from situations where insurers do not provide coverage or payment. Why would insureds commit to a costly

non-voidable contract if they are left on the hook entirely if insurers fail to pay for losses? State Farm acknowledges that giving "effect to plain meaning of the [repair] agreement's terms allows [James] to void the contract in the event State Farm does not pay for the Tear Out." Nothing in the State Farm policy or Florida law, however, requires that policyholders enter non-voidable contracts that they are powerless to cancel if coverage is denied. An opt-out clause protects those who choose to not expend their monies on costly repair contracts and pursue other options. Plus, it makes little sense to impute a non-textual mandate that policyholders must enter non-voidable contracts; an insurer that denies coverage has no say or legal interest thereafter in forcing policyholders to incur non-voidable expenses.

Overall, the competing interpretations of the tear out clause favors that of the insured. State Farm's interpretation is not supported by the text or context; we would have to strain to find that it prevails over the meaning advanced by James. Accordingly, we affirm the trial court's entry of summary judgment for James.[*]

AFFIRMED.

MAKAR and JAY, JJ., concur.
MAKAR, J., concurring, with opinion.
SOUD, J., specially concurring, with opinion.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

---

[*] We also grant James's motion for appellate attorney's fees and remand the matter to the trial court for a determination of the correct amount.

MAKAR, J., concurring.

The policy at issue says that State Farm will "pay the reasonable *cost* you *incur* to tear out and replace" portions of the residence to access the point where the problem arose. (Emphasis added). Try as I might, I'm unable to conclude that this language plainly and unambiguously means that a policyholder *incurs* the tear out *costs* at the time when the *loss* occurs. James sustained a *loss* due to the water leak at her residence; no costs were incurred at that time. The loss potentially made tear out *costs* necessary to remedy the problem, but it did not trigger the tear out clause. Instead, the clause was triggered when James, as the policyholder, thereafter took action and incurred costs in the remedial stage, for example, by entering a reasonable repair contract. State Farm makes the argument that incurring costs means the policyholder must have an ironclad irrevocable contract; or that the policyholder must have paid such costs. Both arguments are less reasonable than the middle ground that the policyholder advances, i.e., that by entering the contract at issue she has incurred the costs for purposes of payment under the tear out clause, thereby supporting affirmance.

SOUD, J., specially concurring.

I concur with this Court's affirmance in this case because, in my view, the "tear out" provision of the insurance contract *sub judice* is not in any way ambiguous.

I.

James made a claim with State Farm after her Daytona Beach property suffered water damage in August 2018. State Farm initially denied any payments for repairs because it concluded the estimated damages did not exceed her policy's deductible. As a result, James filed suit for breach of contract, after which State Farm exercised its right to appraisal. The appraisal determined that the tear out damages were $38,834.28, an amount in excess of James's deductible.

The homeowner's policy required State Farm to "pay the reasonable cost [James would] ***incur*** to tear out and replace" those portions of her residence needed to access the failed pipe(s). Based thereon, and following appraisal, James requested payment. Rather than pay the amount due James after appraisal, State Farm again denied payment, this time asserting James had not yet "incurred" the tear out expenses.

Importantly, James previously had signed a contract with Advanced Pace Technologies ("APT") for the repairs to her property. Recognizing that James would (or did) file a claim with State Farm, the APT repair contract included the following provision:

> **Project Background and Payment Modification Agreements:** . . . Further, if such insurance claim(s) are made by OWNER [James] and OWNER is thereafter notified that its **insurance carrier will not cover such claim(s)** and/or remit payment for the necessary repairs to the claimed losses, and **only after OWNER**

**has exhausted all reasonable avenues of recovery** from its insurance carrier(s), this Proposal is **voidable** by the OWNER at any time prior to APT commencing work on the Property, upon satisfactory proof to APT that OWNER has reasonably complied with this section of the Proposal.

(Second emphasis added).

In light of this provision, State Farm argues that it properly denied James's claim because her contract with APT for repairs is "illusory" and does not trigger its payment obligations under the policy. State Farm's argument fails.

## II.

There is no dispute as to the amount at issue. Rather, this case presents a legal disagreement about *when* State Farm must pay James. To resolve this disagreement, the central question this Court must answer is this: when does James "incur" the $38,834.28 in tear out costs for purposes of the policy?

### A.

To answer such a question, Florida courts turn to the insurance policy. As is the case with any legal instrument—whether it be a constitution, statute, ordinance, regulation, contract or will[1]—the text is supreme. *See Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020). Therefore, to properly interpret the tear out provision and its requirement that James "incur" tear out expenses, the court "start[s] with the text of the insurance policy," *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 774 (Fla. 2023), because "we are bound by the plain meaning" of its words. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011).

"If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance

---

[1] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 51 (2012).

with the plain meaning of the language used so as to give effect to the policy as it was written." *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing To Pol'y No. 187581*, 56 F.4th 1280, 1285 (11th Cir. 2023) (quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). Simply put, when the language of a contract is plain and unambiguous, it controls—full stop.[2]

An insurance policy is considered ambiguous only when it is susceptible to more than one reasonable interpretation, one providing for, and the other limiting, coverage. *See id.*; *see also Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015). However, "a provision is not ambiguous 'simply because it is complex or requires analysis.'" *Serendipity at Sea*, 56 F.4th at 1285 (quoting *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010)). And "[u]ndefined terms . . . are 'not automatically rendered ambiguous.'" *Roberson v. USAA Cas. Ins. Co.*, No. 5:15-CV-454-OC-30PRL, 2016 WL 5848719, at *3–4 (M.D. Fla. Oct. 6, 2016) (quoting *Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1306 (11th Cir. 2008)). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [about ambiguity] apposite." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So. 2d 938, 942 (Fla. 1979)).

Florida courts will neither search nor strain for ambiguities that do not exist in an otherwise clear contractual provision. *See id.* Nor will we torture the words of a contract so as to subject it to a forced or "unnatural" interpretation. *See id.* at 1228–29 (quoting *Thomas v. Prudential Prop. & Cas.,* 673 So. 2d 141, 142 (Fla. 5th DCA 1996) ("[O]ur courts should not put strain and unnatural construction on the terms . . . of the policy in order to create uncertainty or ambiguity.")).

---

[2] *See Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 627 (11th Cir. 2023) ("The cardinal principle is that a policy's text is paramount . . . . If the policy's 'language is unambiguous, it governs'—end of story." (citations omitted)).

Rather, when reading insurance policies, Florida courts deploy time-tested, long-enduring rules of construction. *See KT State & Lemon LLLP v. Westchester Fire Ins. Co.*, No. 8:21-CV-1941-TPB-AAS, 2023 WL 2456499, at *2 (M.D. Fla. Mar. 10, 2023). In doing so, we read insurance policies—indeed, any contract—"in a common-sense and natural manner," *id.*, and "in light of the skill and experience of ordinary people." *Penzer*, 545 F.3d at 1306 (citation omitted); *see also Roberson*, 2016 WL 5848719, at *3–4 (quoting *Penzer*, 545 F.3d at 1306).

B.

To determine the meaning of "incur" in the policy before us, we first review the contract "to determine whether the parties agreed to give ["incur"] a meaning other than the one ascribed to it in general usage." *Parrish*, 356 So. 3d at 774. They did not. Therefore, the term "incur" "'should be given its plain and ordinary meaning, and [we] may look to legal and non-legal dictionary definitions to determine such a meaning.'" *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (quoting *Botee*, 162 So. 3d at 186).

*Black's Law Dictionary* defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." *Incur*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Hall v. United States*, 566 U.S. 506, 512 (2012) (using this definition); *Hillsborough Cnty. Sheriff's Off. v. Hilsman*, 23 So. 3d 743, 745 (Fla. 1st DCA 2009) (same). In the American Heritage Dictionary, incur is defined as "[t]o acquire or come into (something usually undesirable); sustain[.]" *Incur*, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2019).

Importantly, while we often—and rightly—turn to dictionaries to inform our opinions as to the plain meaning of terms, Florida courts do not engage in a merely robotic exercise when called upon to interpret legal texts; nor do we toil for a strict (or lenient) interpretation. "A text should not be construed strictly, and it should not be construed leniently; it should be construed *reasonably*, to contain all that it *fairly* means." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 23 (emphasis added). Thus, the proper and important work of the

10

court is to arrive at a "fair reading" of the contract; that is to say, "determining the application of a governing text to given facts on the basis of how a *reasonable* reader, fully competent in the language, would have understood the text at the time it was issued." *See* Scalia & Garner, *Reading Law* at 33 (emphasis added).

Based upon the plain meaning of the term "incur" and a fair reading of the tear out provision in toto, it seems clear that James "sustained" the tear out expense or cost of $38,834.28 when her property was damaged by water in August 2018. She "suffered" the expense, as *Black's* defines "incur." James suffered the expense even though she has not yet paid that expense. Indeed, this fair reading is buttressed by the very nature of homeowner insurance claims, where insureds rely upon proceeds from contracted-for insurance coverage to pay for the expense suffered.

Further, this interpretation is consistent with the definition of "incur" State Farm advanced in its arguments, which is born from *Ceballo v. Citizens Property Insurance Corp.*, 967 So. 2d 811, 815 (Fla. 2007). In *Ceballo*, the Florida Supreme Court agreed that "'to incur' means to become liable for the expense, *but not necessarily to have actually expended it*." *Id.* (emphasis added). At oral argument, State Farm conceded that the definition from *Ceballo* is essentially indistinguishable from the definition of "incur" in *Black's*.

Further still, James "brought on herself" the liability to pay APT for the costs of the tear out necessary when she executed the contract for repairs contemplated in the appraisal. James's execution of the repair contract with APT brings her claim squarely within *Black's* definition of "incur."

State Farm's argument that the repair contract with APT is illusory strains all credibility. "Illusory" is defined as "Deceptive; based on a false impression." *Illusory*, BLACK'S LAW DICTIONARY (11th ed. 2019). The is no reasonable reading of James's contract with APT that can lead to the conclusion it is illusory. No colorable argument exists to suggest the contract is deceptive or based on a false impression.

State Farm's argument that James has not incurred the tear out costs because James can void the APT repair contract is simply meritless. By the express terms of the contract, James may void the repair contract with APT *only if* State Farm notifies her that it "will not cover such claim(s) and/or remit payment for the necessary repairs to the claimed losses[.]" Even in the face of a denial by State Farm, James may void the APT repair contract "*only after* [James] has exhausted all reasonable avenues of recovery from" State Farm.[3] This is the only door through which James may pass to void the repair contract—and State Farm alone holds the key.

### III.

As a result, in my view, a fair reading of the tear out provision properly understood in a common-sense and natural manner leads to only one reasonable conclusion: James has incurred the tear out costs made necessary by the water leak at her residence. Therefore, the summary judgment in favor of James is properly affirmed.

---

[3] Given the appraisal, there is no possibility that State Farm will ultimately successfully deny James's claim.