496 So.2d 243 (1986)
Betty Jo SIMMONS, Appellant,
v.
PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, Pennsylvania, a Foreign Corporation, Appellee.
No. 86-634.
District Court of Appeal of Florida, Third District.
October 28, 1986.
*244 Gerald E. Rosser, Miami, for appellant.
Shutts & Bowen and Robert A. Wainger, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
SCHWARTZ, Chief Judge.
Ms. Simmons was admitted to the hospital suffering from extreme high blood pressure. In order to determine whether a kidney problem was contributing to the ailment, her physician performed a renal arteriogram, an invasive x-ray procedure in which a catheter was introduced through the femoral artery and aorta to the renal arteries. After the procedure was completed apparently without incident, Ms. Simmons developed dry gangrene in both feet which required their amputation. It was later determined that, although the arteriogram had been properly performed, the catheter had dislodged cholesterol plaques  caused by previously undiagnosed arteriosclerosis  from the surface of the aorta; the plaques then formed emboli in the feet which ultimately resulted in the loss. This series of events was a not unprecedented consequence of an operation of this kind.
The present case arose when Ms. Simmons sued Provident under a policy which provided benefits for the loss of extremities which were
directly and solely as a result of accidental bodily injuries.
The policy provides an exception which states:
No payment will be made for any loss contributed to or caused by:
* * * * * *
(b) disease or bodily or mental infirmity, or medical or surgical treatment thereof... .
Upon the undisputed facts which have been outlined, both sides moved for summary judgment. The trial judge granted Provident's motion and Ms. Simmons appeals.
We conclude that the arteriogram which indisputably caused the loss was "medical or surgical treatment" of Ms. Simmons's hypertension and that this aspect of the exclusion therefore precluded recovery.[1] *245 The appellant's contrary contention is based solely upon the imaginative claim that the procedure involved only "diagnosis" which is to be differentiated from and is not included within the term "treatment." We do not agree.
The general doctrine that policy exceptions and exclusions are to be restrictively read, Firemans Fund Ins. Co. v. Boyd, 45 So.2d 499 (Fla. 1950); Palatine Ins. Co. v. Whitfield, 73 Fla. 716, 74 So. 869 (1917), is of course tempered by the rule of reason and the principle that even insurance policies must be given practical, sensible interpretations in accordance with the natural meaning of the words employed. Hess v. Liberty Mutual Ins. Co., 458 So.2d 71 (Fla. 3d DCA 1984); New Hampshire Ins. Co. v. Carter, 359 So.2d 52 (Fla. 1st DCA 1978). In our view, there is simply no question that medical "treatment" generally includes the means used to find out what is wrong and specifically includes the arteriogram performed on Ms. Simmons. Diagnosis, that is, determining the medical cause of the patient's problems  as in the present case in which the operation was performed to find the precise etiology of the plaintiff's hypertension  is an obviously indispensable element of the entire process of trying to alleviate the symptoms and get the patient well. This point was effectively made in Provident Life & Accident Ins. Co. v. Hutson, 305 S.W.2d 837, 839-40 (Tex.Civ.App. 1957), which explicitly rejects the appellant's present position:
"The meaning of the word `treatment' as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the preliminary examination, including sometimes an exploratory operation or an exploratory examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term `treatment,' even though it may not be an indispensable prerequisite." Order of United Commercial Travelers v. Shane, 8 Cir. [1933], 64 F.2d 55, 59... . Within [the] legal meaning must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or a surgeon on the body of the patient in the diagnosis of or in preparation for cure.
Accord McKay v. Bankers Life Co., 187 N.W.2d 736 (Iowa 1971); Dinkowitz v. Prudential Ins. Co., 90 N.J. Super. 181, 216 A.2d 613 (1966); Zeh v. National Hosp. Ass'n, 233 Or. 221, 377 P.2d 852 (1963); Black's Law Dictionary 1346 (5th ed. 1979) (treatment is "[a] broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies"); 10 Couch on Insurance 2d § 41:449 (rev. ed 1982)("The words `medical and surgical treatment,' as used in an accident insurance policy excluding loss caused by medical or surgical treatment, means that which is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it... ."). There is no contrary authority.
In sum, Ms. Simmons attempts to draw a distinction which does not exist. We have previously observed that "while an expansive definition of the perhaps ambiguous term `cat' may include a lion, it cannot include a dog." Puente v. Arroyo, 366 So.2d 857, 858 (Fla. 3d DCA 1979). In like fashion, it can be said that while a restricted interpretation of the word "cat" may not include a lion, it must include both Calicos and Siamese. Accord Blue Cross & Blue Shield v. Cassady, 481 So.2d 1315 (Fla. 4th DCA Case no. 85-1238, opinion filed, October 15, 1986); see also M.E. *246 Charlesworth, Ltd. v. Perez, 426 So.2d 1107, 1108 n. 1 (Fla. 3d DCA 1983). The arteriogram which caused the loss was part of Ms. Simmons's medical treatment and the trial court on that ground properly found that she could not recover.
Affirmed.
NOTES
[1] This holding makes it unnecessary to determine whether we also agree with either or both of Provident's other substantial arguments for affirmance: (a) that complications of medical or surgical procedure are not "accidents," Beneficial Standard Life Ins. Co. v. Forsyth, 447 So.2d 459 (Fla. 2d DCA 1984); and (b) that the loss was "contributed to or caused by ... [the] disease" of arteriosclerosis, which caused the aortic plaques. See Berg v. New York Life Ins. Co., 88 So.2d 915 (Fla. 1956); The Maccabees v. Terry, 67 So.2d 193 (Fla. 1953).