687 So.2d 852 (1997)
Isidro PUIG, Individually and as Personal Representative of the Estate of Gloria Puig, Appellant,
v.
CITICORP LIFE INSURANCE COMPANY, p/k/a Family Guardian Life Insurance Company, an Arizona corporation, Appellee.
No. 95-1787.
District Court of Appeal of Florida, Third District.
January 8, 1997.
Rehearing Denied February 26, 1997.
Robles & Gonzalez and Barbara Green, for appellant.
*853 Hinshaw & Culbertson and Joseph T. Kissane, Jacksonville, for appellee.
Before COPE, GERSTEN and SHEVIN, JJ.
COPE, Judge.
Isidro Puig, acting on his own behalf and as personal representative of the Estate of Gloria Puig, appeals a summary final judgment in favor of defendant-appellee Citicorp Life Insurance Company.[1] We affirm the trial court's interpretation of the insurance policy but reverse the summary judgment with respect to the fraud and reformation claims.

I.
Plaintiff Isidro Puig and his wife, Gloria Puig, obtained a mortgage loan of $73,991.14 from Citibank Federal Savings Bank of Florida. Thereafter plaintiff received a solicitation letter from Citibank offering to sell insurance which would cover the mortgage balance. Plaintiff speaks and reads very little English, but had his ten-year-old son translate the letter.
Plaintiff called the company and asked for a representative to speak to him in Spanish. Plaintiff told the representative that he was calling for the life insurance company, and the representative told him that he had the correct number. Plaintiff inquired about the coverage described in the solicitation letter. The representative told Puig that the insurance policy would pay off the mortgage if he or his wife died from any cause. The representative told him to fill out the form which had been included with the letter, and plaintiff did so. The preprinted form already contained the mortgage loan number, rates for single and joint coverage, mortgage balance, and the Puigs' names. It was only necessary for the Puigs to sign, and provide their dates of birth and telephone number.
In response to the application, the insurer initiated coverage and sent a "Certificate of Group Decreasing Term Accidental Death Insurance." The two-page certificate summarizes the coverage and exclusions. The Puigs filed the document away.
The following year Gloria Puig became ill. Her doctor prescribed a medication containing penicillin. Ms. Puig had an allergic reaction from which she died at the age of thirtythree.
Plaintiff submitted a claim under the insurance policy. The insurer denied coverage. The insurer explained that the policy the Puigs bought was an accidental death policy. The insurer took the position that the allergic reaction to medication did not qualify as an "accident," and that, in any event, the policy's exclusion for medical treatment applies in this case.
Plaintiff filed suit. He seeks to recover under the insurance policy. Alternatively, he alleges fraud, asserting that the insurer's representative misrepresented the coverage of the policy, knowing that Puig did not understand or read English. Puig also made a claim for reformation of the insurance policy.
The trial court entered summary judgment in defendant's favor. The court found that Gloria Puig's death was not covered by the insurance policy. On the claims for fraud and reformation, defendant filed affidavits saying that the company had searched its records and had no record of Puig's telephone call inquiring about the terms of the coverage. The trial court entered summary judgment on those claims as well and plaintiff has appealed.

II.
We conclude that the trial court was correct on the coverage issue. Although the decedent's allergic reaction to prescription medication constitutes an "accident" within the general coverage of the insuring clause, this occurrence falls within the exclusion for medical treatment.
The accidental death insurance policy provides coverage where "the insured's death... results directly (and independently of all *854 other causes) from a bodily injury ... caused by an accident...."[2] The insurance policy does not contain a definition of the term "accident."
We agree with plaintiff that the Florida Supreme Court decision in Prudential Property and Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla.1993), is dispositive on this issue. The court there said, "As a practical matter, the average person buying accident insurance policies assumes that he is covered for any fortuitous and undesigned injury." Id. at 471 (citation and internal quotation marks omitted). The court explained:
For example, in Gulf Life Insurance Co. v. Nash, [97 So.2d 4 (Fla.1957),] the insured attempted to frighten his friends by holding a gun to his own chest and pulling the trigger three times, believing all three chambers to be empty. The insured was killed when the gun discharged on the third trigger pull. The insured's "act" in pulling the trigger and attempting to frighten his friends clearly was intentional, but the insured's injury was deemed accidental within the meaning of the special accident insurance policy because the insured never intended to cause a fatal injury even though the shot flowed from an intentional act. Accordingly, the Court held the injury was covered by the policy in which the insurer had agreed to pay if the insured should meet his death by accidental means.
622 So.2d at 470.[3]
Following the court's reasoning, we conclude that the unexpected and unintended allergic reaction to the prescription medication constitutes an "accident" for purposes of the insuring clause. The fact that the decedent intentionally ingested the prescription drug does not defeat coverage, for the allergic reaction was a "fortuitous and undesigned injury." Id. at 471 (citation omitted).[4]
The insurer relies on Beneficial Standard Life Insurance Co. v. Forsyth, 447 So.2d 459 (Fla. 2d DCA 1984), but we distinguish that case. First, Forsyth was decided prior to Swindal, and if there is any inconsistency, the Florida Supreme Court's later decision in Swindal controls. Second, in Forsyth the decedent died as a result of a complication which developed following surgery. Although unexpected from a medical standpoint, the complication was a known possible risk of surgery. 447 So.2d at 461. In the present case, we have an entirely unanticipated allergic reaction to a prescription drug.[5]
The next question is whether coverage is excluded under the policy's exclusion for medical treatment. In pertinent part, the exclusion states that "[t]he Company's liability is limited if you die from a medical ... *855 treatment...."[6] Where this exclusion is applicable, "[t]he Company's liability is limited to the return of the premium paid for this coverage."
In the present case the decedent sought treatment for an illness. The physician prescribed a prescription medication for the illness. The decedent died from an allergic reaction to the penicillin-based medication.
This court construed the scope of an indistinguishable medical treatment exclusion in Simmons v. Provident Mutual Life Insurance Co., 496 So.2d 243 (Fla. 3d DCA 1986). The court stated, "The general doctrine that policy exceptions and exclusions are to be restrictively read is of course tempered by the rule of reason and the principle that even insurance policies must be given practical, sensible interpretations in accordance with the natural meaning of the words employed." Id. at 245 (citations omitted). The court went on to say, in part, that the legal meaning of medical treatment includes "`what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity....'" Id. (citations omitted). The court cited with approval the following definitions:
Black's Law Dictionary 1346 (5th ed. 1979) (treatment is "[a] broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies"); 10 Couch on Insurance 2d § 41:449 (rev. ed 1982)("The words `medical and surgical treatment,' as used in an accident insurance policy excluding loss caused by medical or surgical treatment, means that which is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it....").
496 So.2d at 245. We conclude that the consumption of a medication which has been prescribed by the treating physician falls within the term "medical treatment" and falls within the medical treatment exclusion. It follows that under the terms of the medical treatment exclusion, the insured's recovery would be limited to the return of the premium paid for the coverage. The summary judgment on the coverage issue is affirmed.

III.
Plaintiff has pled alternative claims for fraud and reformation. We read the summary judgment record in the light most favorable to the plaintiff as the nonmoving party.
Plaintiff testified that he received an insurance solicitation from his lender, Citicorp. He asked his ten-year-old son to translate the letter. His son explained that it was a solicitation with regard to life insurance.
Plaintiff testified that he called the company for an explanation of the insurance solicitation, and advised the company representative that he needed an explanation in Spanish because he did not understand or read English.[7] The defendant's representative explained that the solicitation was for life insurance which would pay off the home mortgage in the event of the insured's death. According to plaintiff's testimony, defendant's representative said that the policy would provide coverage in the event of death for any cause. Plaintiff was not informed that the insurance policy coverage was limited solely to death by accident. Plaintiff testified that had he been given an accurate description of the insurance coverage, he never would have purchased it but instead would have purchased an appropriate insurance policy.
Plaintiff alleged that the information he was given by the defendant's representative is a misrepresentation of the contents of the accident insurance policy. He therefore asserted a claim for fraud.
Defendant moved for summary judgment, and submitted affidavits of two employees who state that they have searched company *856 records and find no record of plaintiff's telephone call. Conspicuous by its absence is any assertion that defendant makes a written record of all telephone calls which defendant receives. See § 90.803(7) Fla. Stat. (1995) (hearsay exception providing for admissibility of "[e]vidence that a matter is not included in the ... records ... of a regularly conducted activity to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a ... record ... was regularly made and preserved, unless the sources of information or other circumstances show lack of trustworthiness.") (emphasis added). Boiled down, defendant claims that the telephone call did not take place because it has no record of it. Under the circumstances, however, the plaintiff's testimony is accepted as true. The factual conflict presents an issue for trial.
Defendant also argued in the trial court that plaintiff's account is wholly incredible because, according to defendant, plaintiff is claiming that he was promised whole life insurance for $11.84 per month. Assuming for purposes of discussion that this argument is cognizable in a summary judgment proceeding, the defendant's argument mischaracterizes the plaintiff's position. The plaintiff made no claim that he was purchasing whole life insurance. What was outlined to the plaintiff in the telephone call amounts to a declining term life insurance policy, where the term of the insurance would be the same as the duration of the mortgage, and the amount of the insurance coverage would decline as the principal balance of the mortgage was paid down. Defendant concedes that it sells such term life policies.
We conclude that there were disputed issues of material fact which precluded the entry of summary judgment on the fraud and reformation claims. The summary judgment is reversed on those claims and the cause remanded for further proceedings consistent herewith.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] Citicorp Life Insurance Company is presently known as Family Guardian Life Insurance Company.
[2] The full text of the insuring clause provides:

ACCIDENTAL DEATH BENEFIT: PAYMENT: The Company agrees to pay the amount of accidental death insurance in force upon receipt of due proof of insured's death, provided that the insured's death:
a) results directly (and independently of all other causes) from a bodily injury (including a bodily injury arising out of or in the course of employment) of the debtor cause by an accident occurring while the debtor is insured under this policy; and
b) occurs no later than 90 days after the date of the accident.
The death benefit is equal to the amount of insurance in force on the date of the insured's death. If joint accidental death coverage is in effect, the benefit will be paid on receipt of due proof of the death of the first insured to die and insurance coverage will end. No benefit will be paid on the surviving insured.
[3] The court also stated that for purposes of an accident insurance policy, no distinction would be drawn between "accident" and "accidental means." Id. at 471.
[4] There is a division of authority in other jurisdictions on whether unexpected death from medication or anesthesia constitutes an "accident" for purposes of an accident insurance policy. See 10 Couch on Insurance 2d §§ 41:113-41:119 (rev. ed. 1982).
[5] It makes no difference whether the decedent had a hitherto unknown allergy to penicillin, or whether decedent had a known allergy to penicillin and the treating physician negligently prescribed a medication containing penicillin without inquiring about allergies or warning that the medication contained penicillin. Under either theory, the allergic reaction was a wholly unexpected consequence and constituted an "accident" within the meaning of Swindal. As to medical negligence, see 10 Couch on Insurance 2d §§ 41:114.
[6] The exclusion reads in full:

MEDICAL TREATMENT: The Company's liability is limited if you die from a medical or surgical treatment, except a loss resulting directly from a surgical procedure required for treatment of any injury not excluded under this section and performed within 90 days after the date of injury. The Company's liability is limited to the return of the premium paid for this coverage.
[7] Plaintiff also testified that his wife had similarly limited ability to understand English.