GREEN, J.
An insurer appeals an adverse final summary judgment entered in its insured’s action for the wrongful termination of disability benefits. At issue in this case is whether the occurrence of a known surgical complication or risk not due to a mishap or malpractice, can be deemed an accident under a disability policy providing lifetime benefits for the occurrence of an accident. We conclude that the occurrence of a known surgical complication, in the absence of a medical mishap, cannot be deemed an accident for purposes of the policy. We therefore reverse the summary judgment with directions that judgment be entered in favor of the insurer.
Pennsylvania Life Insurance Company (“Penn Life”) insured Dr. Jack Aron, an orthopedic surgeon, under a disability in *1172 surance policy which had been in effect since 1963. According to the terms of the policy, Dr. Aron would receive lifetime disability benefits if he became disabled due to an accident but benefits only up to the age of sixty-five (65) if he became disabled due to sickness. The policy did not define either accident or sickness. In 1983, Dr. Aron underwent cataract removal surgery. Dr. Richard Kratz, a renowned expert in the field, performed the surgery. Approximately four years later, or 1987, Dr. Aron sustained a spontaneous retinal detachment in his right eye which resulted in his loss of sight and disability. The retinal detachment was a direct result of a tear to the posterior lens capsule causing vitreous loss, which had occurred as a result of the earlier cataract removal surgery. The parties stipulate that retinal detachment is a known surgical risk of cataract surgery occurring in a small percentage of the operations performed. The parties also stipulate to the absence of any negligence or malpractice on the part of Dr. Kratz during the original surgery. Dr. Aron’s retinal detachment was repaired in 1987 by a Dr. Thomas Hanscon but Dr. Aron remains disabled.
Penn Life paid Dr. Aron monthly disability benefits under its policy from December 23, 1987 until December 7, 1996, when Dr. Aron reached the age of sixty-five. Dr. Aron filed this suit alleging that his disability was caused by an accident rather than a sickness, thereby entitling him to lifetime disability income benefits under the policy. Penn Life answered and defended this suit on the grounds that Dr. Aron’s disability was due to a known complication of cataract surgery and was thus an illness rather than an accident. Subsequently, both parties filed cross motions for summary judgment on the issue of whether the retinal detachment could be deemed an accident under the policy. In the absence of a policy definition for accident, the trial court resorted to the dictionary definition of the term[1] and concluded that the lack of a policy definition dictated a construction affording the insured with the greatest amount of coverage with all ambiguities being interpreted in the insured’s favor. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997); see also Prudential Property and Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). Accordingly, the trial court entered final summary judgment in Dr. Aron’s favor and this appeal followed.
The issue of whether the occurrence of a known medical complication resulting from standard medical treatment or surgery qualifies as an accident under a policy providing benefits for accidental injuries appears to never have been squarely addressed by the supreme court or our district. In Puig v. Citicorp Life Ins. Co., 687 So.2d 852 (Fla. 3d DCA 1997), we were confronted with the question of whether an insured’s unanticipated fatal allergic reaction to prescriptive medication qualified as an accident under an accidental death policy. Id. at 853. Although we opined in Puig that this was an entirely unanticipated reaction which qualified as an “accident” within the general coverage of the insuring clause, we nevertheless held that the insured’s recovery was precluded by a policy exclusion for medical treatment. Id.
In the absence of precedent from either the supreme court or this district on the issue, Penn Life urges us to adopt the analysis and holding of the Second District Court of Appeal in Beneficial Standard Life Ins. Co. v. Forsyth, 447 So.2d 459 (Fla. 2d DCA 1984), that in the absence of a miscue or mishap during medical treatment, the occurrence of a known or foreseeable complication is a sickness rather than an accident. The facts in Forsyth briefly were that Mr. Forsyth, who was morbidly obese, died following an elective *1173 jaw wiring surgical procedure undertaken to inhibit his ingestion of solid foods. Id. at 460. Mr. Forsyth had had health problems which rendered him less likely to survive surgical complication than an otherwise healthy person and it was stipulated that he died as a result of developing a pulmonary embolism, a known surgical complication. Id. The parties stipulated that the development of the pulmonary embolism was one of the many risks of the surgery which although possible, was not anticipated to develop during the type of surgical procedure performed on Mr. For-syth. Id. at 461.
At the time of his death, Mr. For-syth had been insured under an insurance policy providing coverage for accidental death. The policy, as in this case, did not define the term “accident.” Rather than declaring the policy to be ambiguous for this reason, the Forsyth court relied upon its earlier decision in Braley v. American Home Assurance Co., 354 So.2d 904 (Fla. 2d DCA 1978), which utilized a “man-on-the-street” test to determine whether the insured’s death was accidental under the policy. Forsyth, 447 So.2d at 461. That test requires the finder-of-fact to consider the facts of the particular case as viewed through the eyes of the average, everyday “man-on-the-street.”[2] Id. (citing to Braley, 354 So.2d at 905). Viewed in this light, the court did not find Mr. Forsyth’s death from surgical complications to be accidental. More importantly, however, the court found the following principle of law found in 10 Couch on Insurance (Second) § 4.113 (Rev. Ed.1982) to be applicable:
When there is no initial or preceding occurrence which comes within the coverage of a policy, and the insured undergoes medical treatment for the purpose of curing a disease or other unhealthy or abnormal condition, the mere fact that the insured dies or is injured as the result of such treatment does not constitute an accident, is not accidental, nor caused by accidental means. Otherwise stated, if an operation is not necessitated by an injury resulting from an accident, death occurring during or following the operation can be considered “accidental” only when it is the result of mishap or misadventure in operative procedure.
Forsyth, 447 So.2d at 462. Thus, given the stipulated record that there was no mishap or miscue during Mr. Forsyth’s operation as well as the fact that the development of the pulmonary embolism was one of the known, albeit unanticipated risks of the surgical procedure performed, the court held that Mr. Forsyth’s death could not be deemed accidental under the policy. Id.
We agree with and adopt this analysis and approach for this case. The trial court found the term “accident” to be ambiguous by the mere fact that it was not defined in the policy. However, “[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.” See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998); Con *1174 tainer Corp. of Am. v. Maryland Cas. Co., 707 So.2d 738, 736 (Fla.1998); Jefferson Ins. Co. v. Sea World, 586 So.2d 95, 97 (Fla. 5th DCA1991).
On this appeal, the parties have stipulated that retinal detachment is a known complication of cataract removal surgery. They have also stipulated that Dr. Aron received standard medical surgery for the removal of his cataracts without the occurrence of any mishap or miscue during the surgical procedure. Given these stipulations and utilizing the ordinary language or “man-on-the-street” definition of accident, we believe that Dr. Aron’s resulting retinal detachment must be deemed a sickness. Indeed, any other conclusion would lead to an irreconcilable result. There are known complications or risks associated with even the most basic or standard of medical treatments. When such complications arise in the absence of a medical mishap, the average person on the street would normally attribute the complication to a sickness rather than to an accident. See Bathony v. Transamerica Occidental Life Ins. Co., 795 F.Supp. 296, 299 (D.Alaska 1992) (when the insured became paralyzed as a foreseeable but unexpected result of a spinal injection, the court concluded that a known complication from a medical procedure is not an accident, but a sickness for which the medical procedure was undertaken, notwithstanding the insured’s subjective belief that he would not suffer an adverse reaction); Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1053 (7th Cir.1991) (stating that “[w]hen you die from the standard complications of standard medical treatments, you don’t, it seems to us, die in or because of an accident; your death is the result of illness.”).
Dr. Aron, nevertheless questions the viability of Forsyth’s holding in light of certain language contained in the subsequent supreme court’s decision of Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993), that the foreseeability doctrine is inappropriate in construing accident policies:
[The] doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce the liability.
In relying upon this language Dr. Aron, however, overlooks the fact that the Smn-dal court was not addressing the issue presented in Forsyth or to us in this case. The Swindal court was addressing accident in the context of fortuitous and unde-signed injury.[3] Penn Life correctly points out that although the pulmonary embolism in Forsyth and the retinal detachment in this case were both undesigned injuries, they nevertheless cannot be deemed fortuitous as they were well known possible risks or complications of standard medical treatment. For this reason, we think that Dr. Aron’s reliance upon the Stuindal language is inappropriate in this context.
Thus, for the foregoing reasons, we reverse the summary judgment entered and remand with instructions that summary judgment be entered in favor of Penn Life.

. The trial court relied upon the following definition of "accident” from the American Heritage College Dictionary 8 (3d ed.1997):
1. a. An unexpected, undesirable event, b. An unforseen incident, c. Lack of intention; chance ...

. In Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1052 (7th Cir.1991), the seventh circuit embraced Justice Cardozo's sentiments in his dissenting opinion in Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 495-96, 54 S.Ct. 461, 462, 78 L.Ed. 934 (1934), that the courts could provide no better definition of "accident” than the "common understanding as revealed in common speech”:
A lay person has a clear if inarticulate understanding of the difference between an accidental death and a death from illness, and that understanding will not be altered or improved by head-spinning judicial efforts at definition, such as the mysterious attempt by a court in this state to define disease as that which "originated from a source that is neither traumatic nor physical.” A person can tell time without being able to define “time” and he can know how to ride a bicycle or shoot pool without being able to explain the principles of physics that enable him to do those things. He can also classify a death as the consequence of illness or accident without being able to define either term, (citations omitted).

. Specifically, Swindal addressed the question of whether the intentional injury exclusion clause contained in a homeowner's policy excluded coverage for bodily injuries sustained where the insured committed an intentional act with the intention of only causing fear but which actually resulted in accidental bodily injuries.