Merrill **REUTER**, M.D. Plaintiff,

v.

**LANCET INDEMNITY RISK RETENTION GROUP, INC.,** a foreign profit corporation; and **Physicians Casualty Risk Retention Group,** a foreign profit corporation, Defendants.

**Case No. 16–80581–CIV–MARRA**

United States District Court, S.D. Florida.

Signed 06/19/2017

Filed 06/20/2017

Christa Lauren McCann, Clark Fountain La Vista Prather Keen & Littky–Rubin, West Palm Beach, FL, for Plaintiff.

Matthew B. Criscuolo, John David Dickenson, Cozen O'Connor, West Palm Beach, FL, Christopher Mark Ballentine, Pro Hac Vice, John Edwin Fisher, Fisher, Rushmer, Werrenrath, et al., Orlando, FL, for Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KENNETH A. MARRA, United States District Judge

This Cause is before the Court upon Defendant Physicians Casualty Risk Retention Group's ("Physicians") Motion for Summary Judgment, filed on February 3, 2017 (DE 54). Plaintiff Merrill Reuter, M.D., filed a Response (DE 61) in opposition to the Motion, and Defendant Physicians filed a Reply (DE 62). The Court has carefully considered the Motion, the Response, and the Reply, and supporting documents, and is otherwise fully advised in the premises.

In the Motion for Summary Judgment, Physicians argues in this insurance coverage dispute that coverage is excluded under the subject policy's Prior Notice Exclusion, which applies if an insured gave notice under a previous policy of an "Occurrence," which is defined as "an unexpected accident or injury resulting from the insured's rendering or failure to render services." Specifically, Physicians argues that Plaintiff gave notice to his prior carrier, Lancet Indemnity Risk Retention Group, Inc. ("Lancet"), under a previous policy of an "Occurrence" when Plaintiff forwarded documents to Lancet pertaining to a Florida Department of Health ("DOH") investigation into the same incident that forms the basis of the claim for which Plaintiff seeks coverage.

As more fully discussed below, the Court concludes that Plaintiff's transmission of the DOH documents gave notice to his prior carrier of an "Occurrence" that triggered the Prior Notice Exclusion, since the DOH documents contained allegations that Plaintiff's former patient suffered an unexpected cardiac arrest and that Plaintiff may have violated the Medical Practice Act in connection with the incident. Plaintiff's attempt to argue for a more narrow construction of the Prior Notice Exclusion, one which would require a demand for monetary damages to constitute notice for purposes of the exclusion, is unsupported by the clear and unambiguous policy language.

Because the Prior Notice Exclusion applies, Physicians is not obligated to afford coverage for the claim in question (which arose from the same occurrence that was the subject of the notice to Lancet). Accordingly, and as discussed more fully below, Defendant Physicians is entitled to summary judgment on the claims asserted against it in the Complaint.

## I. BACKGROUND

The undisputed facts, as culled from the deposition testimony and documentary evidence, in a light most favorable to the non-moving party for purposes of the Motion for Partial Summary Judgment, are as follows:

### A. The Physicians Policy

Physicians issued a "claims made" professional liability insurance policy to Plaintiff for the policy period of May 1, 2014 to May 1, 2015, with a retroactive date of May 1, 2011 and "prior acts" coverage. ("Physicians Policy"). (DE 1–2, at 14, Compl. ¶ 26.) The Physicians Policy provides a number of exclusions under the "Exclusions" section as follows:

We are not obligated to defend or pay any damages, judg[ment]s or settlements for any Claim:

(1) Arising out of any Occurrence that

**(a) Was the subject of any written notice given under a previous policy;**

(b) Was the subject of any prior or pending written demand for monetary damages, administrative or arbitration proceeding, civil or criminal case against Insured, which existed prior to the date of the Policy Period;

(c) That was reported in the Application or was identified in any summary or statement of Claims or potential Claims submitted in connection with the Application;

(d) That was reported to any other source from which payment might be made before the initial effective date

of the Policy Period of the policy we issued to you; or

(e) Arising out of Professional Services rendered prior to the Retroactive Date of this Policy.

(DE 56–8, Physicians Policy, at 7 (emphasis added).) The term "Occurrence" means "an unexpected accident or injury resulting from the insured's rendering or failure to render services." (*Id.* at 14.) The term "Claim" is defined in the Physicians Policy as follows:

1. receipt by the Insured, of a written notification of an intention to hold the Insured responsible for damages as described above, or 2. the receipt, by the Company during the term of the policy, of a written demand for monetary damages on behalf of the injured to hold the Insured responsible for damages arising from the rendering or failure to render professional services by Insured or 3. The filing of a Complaint or request for arbitration hearing.

(*Id.* at 13.)

### B. DOH Notifies Plaintiff of Investigation of Case Summary involving V.G.

Prior to the issuance of the Physicians Policy, in a letter dated August 20, 2013, and addressed to Plaintiff, the Florida Department of Health (the "DOH" and the "Department") notified Plaintiff that it was investigating a document ("Case Summary") the DOH had received regarding Plaintiff's possible violations of the Medical Practice Act in connection with patient V. G.[1] ("DOH Letter"). (DE 40–2, Sealed DOH Letter at 1–2.) (The DOH Letter and Case Summary are collectively referred to as the "DOH Correspondence.")

---

1. The patient's full name has been withheld to protect the privacy of the individual. The patient will be referred to herein by his or her initials, "V.G."

The DOH Letter stated in relevant part, "We are currently investigating the enclosed document received by the Department of Health. This investigation was initiated after it was determined that you may have violated the Medical Practice Act." (*Id.* at 1.) The DOH Letter outlined procedures governing the investigation. (*Id.*)[2]

The Case Summary, which was enclosed with the DOH Letter, indicates that Plaintiff was the Respondent in the case and lists his profession as "1501 Medical Doctor," contains an incident date of June 10, 2013, and contains the following information regarding the incident and violations:

Possible Violation of SS. 456.072(1)(k)(dd), 458.331(1)(g)(t)(nn), F.S. Failure to perform legal obligation, Violate Statute/Rule of Board, Pract Below Standard of Care

Code 15 Report shows, 46 y/o F patient V.G., underwent a surgical procedure at Citrus Tower Ambulatory Surgery Center. V.G. reportedly vomited multiple times with resultant bradycardia and had a cardiac arrest. Transported to South Lake Hospital and admitted to ICU. V.G. transferred on 6–14–2013 Orlando Regional Medical Center for continuous neurological monitoring due to seizures and anoxic brain injury.

(*Id.* at 2.)

### C. Plaintiff Forwards DOH Letter and Enclosed Case Summary to his Insurance Agent, who Forwards the Documents to Lancet's Claims Representative.

Reuter sent the DOH Letter and the enclosed Case Summary to his insurance agent, Děbby Arnemann. (DE 56–2, E-mail with subject of "DOH complaint—M. Reuter," dated August 26, 2013 from Arnemann to Chris Teter ("Please see the attached correspondence we received from Dr. Reuter this morning & let us know if any additional action is needed at this time.").) Reuter's agent Arnemann then sent by e-mail the DOH Letter and the enclosed Case Summary to Chris Teter, the claims representative with Lancet. (*Id.*)[3]

In response, Lancet opened a file related to the DOH proceeding, pursuant to the administrative coverage portion of a policy that Plaintiff had with Lancet. (DE 59, Plaintiff's Statement of Facts ("SOF") ¶ 7; DE 63, Physicians' SOF ¶ 37.)

### D. Former Patient Issues Notice of Intent

On July 8, 2014, the patient V. G. issued a Notice of Intent to Initiate Medical Malpractice Litigation by V.G, related to V. G.'s treatment ("Notice of Intent Letter"). (DE 56–9, Notice of Intent Letter.)

### E. The Lancet Policy and Lancet's Denial of Coverage

Lancet issued a "claims made" professional liability insurance policy to Plaintiff for the policy period of May 1, 2013 to May 1, 2014, with a retroactive date of May 1, 2011 ("Lancet Policy"). (DE 1–2, at 8, Compl. ¶ 13.) On or about July 15, 2014, Lancet advised Plaintiff that it would not provide coverage for V. G.'s claim under the Lancet Policy. (*Id.* ¶ 29.)

### F. Physicians Denies Coverage

On or about August 9, 2014, Plaintiff received correspondence from Physicians

---

**2.** The DOH ultimately decided to dismiss the disciplinary matter against Plaintiff. (DE 1–2, Compl. ¶ 62.)

**3.** Plaintiff does not dispute that he forwarded the DOH documents to Lancet (through his broker). (DE 55, Def.'s SOF ¶ 6; DE 59, Pl.'s SOF ¶ 6.)

advising that it would not provide coverage. (*Id.* ¶ 31.)

## II. PROCEDURAL HISTORY

This lawsuit was originally filed in state court and then removed to this Court. (DE 1.) In the Complaint, in relevant part, Plaintiff asserts breach of contract claim and declaratory judgment claims against Physicians (Counts II and IV, respectively).[4] (DE 1-2, at 8, Compl.) Plaintiff alleges that Physicians breached its duty under the Physicians Policy to defend and indemnify him against the claim made by patient V. G. Plaintiff also seeks a declaration that the patient V. G. brought a "Claim" against him as defined in the Physicians Policy during the May 1, 2014 through May 1, 2015 policy period and therefore Physicians has a duty to defend and indemnify. (*Id.* at 34.) Plaintiff contends that the Notice of Intent and request for medical records issued by V.G. constituted a "Claim" within the meaning of the Physicians Policy. (*Id.* ¶ 92.)

■ Although the Complaint also asserted claims against Lancet, this Court dismissed those claims upon Lancet's Motion to Dismiss on December 15, 2016. (DE 38.) In Lancet's Motion to Dismiss, it argued that none of the documents identified in the Complaint as being provided to it during the time period applicable to the Policy it issued, including the DOH Correspondence, constituted a "Claim"[5] that triggered coverage. The Court agreed. As to the DOH Correspondence, the Court reasoned that Plaintiff received the DOH Letter from the Florida administrative agency, not the victim. Furthermore, none of the documents purported to "demand[ ] monetary damages" or "notify[ ] the Insured of an intention to hold an Insured responsible for an Occurrence," as required by the Lancet Policy.[6] Accordingly, the Court concluded that Lancet was enti-

---

4. The Complaint contained claims against Defendants The Physicians Advocate, LLC and Debra Arnemann, but those claims were dismissed. (DE 1, Notice of Removal ¶ 7.) The Complaint also contained claims against Defendant Lancet, but the Court dismissed those claims in an Order granting Lancet's Motion to Dismiss. (DE 38.)

5. The word "Claim" is defined in the Lancet Policy as follows:

> (1) a written notice received by an **Insured**, and forwarded to us, from a person or entity, or on behalf of such person or entity by another party legally empowered to act on their behalf, alleging that such person or entity has been damaged by an **Insured** and demanding monetary damages or notifying the **Insured** of an intention to hold an **Insured** responsible for an **Occurrence**; or
> (2) the filing of a civil lawsuit or arbitration proceeding seeking monetary damages. Notifying us of an **Occurrence** that may result in a **Claim** as required under "Section 6–Notice Provisions" does not consti-

tute a **Claim** first made hereunder unless it incorporates items 1 or 2 above.

(DE 1-2, Lancet Policy at 74 (emphasis in original).)

6. Physicians cite *Paradigm Insurance Co. v. P & C Insurance Systems*, 747 So.2d 1040 (Fla. 3d DCA 2000), in support of its position that the letter that Plaintiff received from V.G.'s attorney requesting insurance information was a written demand for monetary damages within the meaning of the exclusion in subsection (1)(b) of the Physicians Policy. The Court cannot agree that *Paradigm* supports Physicians' position.

In *Paradigm*, a judgment holder's attorney sent a letter to the insurer's agents advising that they had negligently failed to procure insurance coverage for the insured and that a loss had occurred (an adverse judgment in excess of two million dollars), and requesting that the letter be given to the agents' insurance carrier. *Id.* at 1041 & n.1. The *Paradigm* court rejected the insurer's contention that the letter did not meet the policy definition of a "claim." *Id.* at 1041. The court reasoned as follows:

tled to dismissal of the breach of contract and declaratory judgment claims against it in the Complaint (Counts I and V, respectively).

Presently pending before the Court is Physicians' Motion for Summary Judgment (DE 54) as to the claims asserted against it in Plaintiff's Complaint. Physicians argues that no coverage exists under the Physicians Policy due to various exclusions.

## III. LEGAL STANDARD

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes

We think a statement of a claim of negligence and resulting loss (in this case, a claimed failure of an insurance agency to procure liability insurance), followed by a request "to turn this letter over to your errors and omissions insurance carrier for handling" amounts to a demand for money within the meaning of Paradigm's policy. *Id.*

Although the letter from V.G.'s attorney in this case did request insurance information and did contain a request that the letter be forwarded to Plaintiff's insurance carrier, the similarities between *Paradigm* and this case stop there. Significantly, whereas the letter in *Paradigm* specifically referred to a loss in the form of a monetary judgment, the letter requesting insurance information in this case did not contain a demand for, or even a vague reference to, damages. *See Myers v. Interstate Fire & Cas. Co.*, No. 806CV2347-T-30MAP,

demonstrate the absence of a genuine issue of material fact." *Id.* To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. The material in the record must be viewed in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to

2008 WL 276055, at *7 (M.D. Fla. Jan. 30, 2008) ("Plaintiff's reliance on the holding in *Paradigm* ... in support of his position that presentation of the Misa letter [demanding insurance information] to Market Finders constituted notice of a claim under the Policy is similarly misplaced. ... The Misa letter makes no demand for money ... [W]hen taken in context, [the] statement that he was retained to represent Matthews in 'a claim for damages' was merely a notice of a potential claim, insufficient to trigger the insurer's duty to defend and indemnify."). As a result, and as more fully discussed in this Court's prior Order (DE 38), the letter that Plaintiff received from V.G.'s attorney requesting insurance information was not a written demand for monetary damages.

conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## IV. DISCUSSION

Defendant Physicians contends that no coverage exists by operation of five exclusions in the Physicians Policy. Because this Court concludes that coverage is excluded under the "written notice" provision set forth in subsection (1)(a) of the "Exclusions" section ("the Prior Notice Exclusion"), as explained below, the Court does not and need not consider the effect of the other exclusions.

Under subsection (1)(a) of the Physicians Policy "any Claim . . . [a]rising out of any Occurrence that . . . "[w]as the subject of any written notice given under a previous policy" is excluded from coverage. (DE 56–8, at 7, Physicians Policy.) Physicians argues that this exclusion applies because Lancet was given notice of the occurrence involving V.G. while the Lancet Policy was in force. In response, Plaintiff argues that the Physicians Policy should be read to require notice of a written demand for damages to trigger the Prior Notice Exclusion. Alternatively, Plaintiff contends that even if the term "notice" in the exclusion is not so restrictively construed, Plain-

tiff did not give his prior carrier sufficient information of an "Occurrence" to trigger the Prior Notice Exclusion. The Court considers Plaintiff's arguments in turn below.

### A. Construction of the Prior Notice Exclusion

 Under Florida law, it is well settled that the construction of an insurance policy, including the extent of coverage, is a question of law for the court. *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla. 1985); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1540 (11th Cir. 1990) (same) (applying Florida law). Under Florida law, the interpretation of insurance contracts is governed by generally accepted rules of construction. *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So.3d 494, 497 (Fla. 2014). "[I]nsurance contracts must be construed in accordance with the plain language of the policy." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005) (citation omitted). Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Constr.*, 133 So.3d at 497 (citation omitted).

 "Ambiguities are construed against the insurer and in favor of coverage." *Id.* (citation omitted). "The general doctrine that policy exceptions and exclusions are to be restrictively read is of course tempered by the rule of reason and the principle that even insurance policies must be given practical, sensible interpretations in accordance with the natural meaning of the words employed." *Simmons v. Provident Mut. Life Ins. Co. of Philadelphia, Pennsylvania*, 496 So.2d 243, 245 (Fla. 3d DCA 1986) (internal citations and quotation marks omitted).

 "If . . . the facts are not in dispute . . ., and [even if] there is an ambigui-

ty in the policy, it is within the province of the trial judge[,] not the jury[,] to resolve the ambiguity as a matter of law." *Ellenwood v. S. United Life Ins. Co.*, 373 So.2d 392, 394 (Fla. 1st DCA 1979)"Where, as here, the facts are essentially undisputed, whether those facts fit within the policy definition is a question of law...." *State Farm Fire & Cas. Co. v. Nickelson*, 677 So.2d 37, 38 (Fla. 1st DCA 1996).

Here, Plaintiff argues that the Prior Notice Exclusion is ambiguous because the Physicians Policy does not state what the written notice must contain or concern. Plaintiff emphasizes that the term "written notice" is not defined in the Physicians Policy. As such, Plaintiff argues that the subsection (1)(a) exclusion should be read to require a "demand for monetary damages" or "an intention to hold the insured responsible for damages." Plaintiff contends that such a reading would be consistent with the exclusion under subsection (1)(b) and the definition of the word "claim" in the Physicians Policy.

As discussed below, the Court cannot agree with Plaintiff's construction of the Prior Notice Exclusion. There is nothing in the Prior Notice Exclusion that supports adding language into the clause. Such a construction of the policy would require the Court to read words into the exclusionary clause that are simply not there and essentially rewrite the insurance policy. This the Court cannot do. *Intervest Constr.*, 133 So.3d at 497 (citation omitted).

**1. The Prior Notice Exclusion Need Not Be Read Consistently with the Other Exclusions.**

██ To bolster Plaintiff's argument, Plaintiff insists that the Prior Notice Exclusion should be read consistently with the exclusion under subsection (1)(b),

which provides more detail than the Prior Notice Exclusion. That exclusion provides that no coverage exists as to a claim arising out of any occurrence that "[w]as the subject of any prior or pending written demand for monetary damages, administrative or arbitration proceeding, civil or criminal case against Insured, which existed prior to the date of the Policy Period." (DE 56–8, Physicians Policy, at 7.)

Plaintiff's proposed construction, however, is not supported by the structure or the wording of the Exclusions section in the Physicians Policy. The Exclusions section provides that "We are not obligated to defend or pay any damages, judg[ment]s or settlements for any Claim: (1) Arising out of any Occurrence that

(a) Was the subject of any written notice given under a previous policy;

(b) Was the subject of any prior or pending written demand for monetary damages, administrative or arbitration proceeding, civil or criminal case against Insured, which existed prior to the date of the Policy Period;

(c) That was reported in the Application or was identified in any summary or statement of Claims or potential Claims submitted in connection with the Application;

(d) That was reported to any other source from which payment might be made before the initial effective date of the Policy Period of the policy we issued to you; *or*

(e) Arising out of Professional Services rendered prior to the Retroactive Date of this Policy.

(DE 56–8, Physicians Policy, at 7 (emphasis added).) As indicated by the word "or" in the Exclusions section and the overall

structure of the section, each of the exclusions specified in subsections (a), (b), (c), (d), and (e) are independent of each other.

Regarding the proper construction of independent exclusions in an insurance policy, the Florida Supreme Court has expressly agreed with the following logic and reasoning:

> [E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.

*See Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 795 (1979), *adopted in LaMarche v. Shelby Mut. Ins. Co.*, 390 So.2d 325, 327 (Fla. 1980) (stating that it fully agreed with the logic and reasoning in *Weedo*); *Greathead v. Asplundh Tree Expert Co.*, 473 So.2d 1380, 1383 (Fla. 1st DCA 1985) ("Although the two [exclusions] may overlap to a certain degree, they are not to be read together.").

The mere fact that the language in the Prior Notice Exclusion is allegedly inconsistent with the more restrictive and detailed language in the exclusion in subsection (1)(b) is not a reason to rewrite the former. Although Plaintiff asserts that the exclusions in subsections (1)(a) and (1)(b) are not consistent, "they bear no relationship with one another" and therefore "can properly be regarded as inconsistent with another" without effect. *Weedo*, 405 A.2d at 795. Hence, the Court cannot conclude that the Prior Notice Exclusion in subsection (1)(a) should be read to require that the requisite notice include a demand for damages based upon the mere existence of an independent exclusion in subsection (1)(b) that requires such a demand.

**2. The Prior Notice Exclusion Does Not Require the Kind of Notice Required to Constitute a "Claim."**

■ Plaintiff's alternative argument that the words "written notice" in the Prior Notice Exclusion should be read consistently with the notice required for a "Claim," is equally unpersuasive. Nothing in the Prior Notice Exclusion suggests that notice of a demand or intention to demand damages is required to trigger the exclusion.

The term "Claim" is defined in the Physicians Policy as follows:

> 1. receipt by the Insured, of a written notification of an intention to hold the Insured responsible for damages as described above, or 2. the receipt, by the Company during the term of the policy, of a written demand for monetary damages on behalf of the injured to hold the Insured responsible for damages arising from the rendering or failure to render professional services by Insured or 3. The filing of a Complaint or request for arbitration hearing.

(DE 56–8, Physicians Policy, at 13.) The kind of notice required for purposes of the Prior Notice Exclusion, however, is different than the written notice required to fall within the scope of a "Claim." Under the plain language of the Prior Notice Exclusion, the subject of the written notice given under a previous policy must be of an "Occurrence." The Physicians Policy defines "Occurrence" as an "unexpected accident or injury resulting from the insured's

rendering or failure to render services." (DE 56–8, Physicians Policy, at 14.) Thus, so long as any "Occurrence" was the subject of a written notice under the Lancet Policy, a claim arising from that occurrence is excluded.

An "Occurrence" is not synonymous with a "Claim" under the Physicians Policy. Whereas an "Occurrence" only requires an "unexpected accident ... resulting from the insured's ... services," a "Claim" requires "written notification of an intention to hold the Insured responsible for damages" or "a written demand for monetary damages." Although an "Occurrence" may evolve into a "Claim," it need not. The following language on the third page of the Physicians Policy, in all capital letters, underscores the distinction:

> PLEASE BE ADVISED THAT NOTIFYING US OF AN OCCURRENCE THAT MAY RESULT IN A CLAIM DOES NOT CONSTITUTE A CLAIM FIRST MADE HEREUNDER UNLESS IT INCORPORATES ITEMS 1–3 LISTED ABOVE.

(DE 56–8, Physicians Policy, at 4.)[7] Thus, Plaintiff's proffered reading of the Prior Notice Exclusion would ignore clear distinctions between the terms "Occurrence" and "Claim" contemplated by the Physicians Policy itself. Under the plain language of the Prior Notice Exclusion, the subject of the written notice given under a previous policy must be an "Occurrence," and nothing else is required.

A federal district court rejected an argument analogous to the one made by Plaintiff in *United Investors Realty Trust v.*

*Hartford Specialty Co.*, No. CIV.A. 3:01-CV-2083N, 2003 WL 22350647, at *3 (N.D. Tex. Sept. 12, 2003). There, the insurance policy contained a clause that excluded coverage for any claim, wrongful act, or circumstance if notice thereof was given under any prior directors and officers liability. *Id.* Emphasizing the word "under," the insured argued that the clause is reasonably construed to mean that for notice to be given under a prior policy, "notice must be given as provided under the policy in a manner capable of effecting coverage under the policy." *Id.* In rejecting the insured's construction of the prior notice language, the court explained that the insured's "proposed construction would dramatically rewrite the notice provision into a prior *coverage* provision, e.g. coverage under the current policy is excluded if the insured has obtained coverage under a prior ... policy." *Id.* (emphasis in original). The court found that the insured's construction did "too much violence to the words of the policy." *Id.* After concluding that a prior insurer had received notice of a "circumstance" as provided for in the prior notice clause, the court held that the prior notice exclusion applied and that the insurers were entitled to summary judgment as a matter of law.

Likewise, in this case, Plaintiff's proffered construction would dramatically rewrite the notice provision into a prior claim provision, i.e. coverage under the current policy is excluded if the insured filed a claim under a prior policy. As in *United Investors Realty Trust*, Plaintiff's construction would do "too much violence" to the actual words of the Physicians Policy, which excludes coverage even if the

---

7. The language "ITEMS 1–3 LISTED ABOVE" refers to the numbered items listed in the definition of "Claim," such as "a written notification of an intention to hold the

Insured responsible for damages" and "a written demand for monetary damages." (DE 56–8, Physicians Policy, at 13.)

insured only gave notice of an occurrence under a prior policy.

In summary, the Court concludes that there is no basis for reading into the Prior Notice Exclusion any requirement that notice must include a demand for damages. The Prior Notice Exclusion unambiguously identifies the subject matter of the notice given under a prior policy that triggers the exclusion. That is, the Prior Notice Exclusion expressly states that the exclusion applies when an *"Occurrence ... [w]as the subject of any written notice given under a previous policy."* (DE 56–8, at 7, Physicians Policy (emphasis added).) The Prior Notice Exclusion is unambiguous as framed, and there is no justification for adding language into the Prior Notice Exclusion that does not exist.

## B. The Prior Notice Exclusion Applies.

 Plaintiff argues that the DOH Correspondence does not contain sufficient information to constitute "written notice" of an "Occurrence," which is defined in the Physicians Policy as "unexpected accident or injury resulting from the insured's rendering or failure to render services." (DE 56–8, Physicians Policy, at 14.) In support, Plaintiff contends that the DOH Correspondence does not specifically mention that Plaintiff's services were the cause of an unexpected accident. Plaintiff emphasizes that the documents do not identify the treatment, if any, performed by Plaintiff that was the cause of injury to V.G.

Plaintiff also underscores that the DOH documents do not indicate any of the following: (1) the existence of a pending claim; (2) the retention of an attorney by the patient; (3) the belief held by the patient that her injury was a result of

Plaintiff's negligence; (4) Plaintiff's intention to pursue a claim; or (5) Plaintiff's intention to seek damages. (DE 61, Response at 7–8.) As to these five items, Plaintiff's position appears to stem from his argument that the Prior Notice Exclusion should be read to require a demand for, or intention to demand, damages. The Court has already rejected that construction of the Prior Notice Exclusion. Therefore, the Court will focus on Plaintiff's contention that the DOH Correspondence fails to give notice of an "Occurrence" because it does not "identify the rendering or failure to render services by Dr. Reuter." (*Id.* at 8.)

It is beyond dispute that the DOH Correspondence identifies an unexpected accident or injury, since the Case Summary states that the patient "underwent a surgical procedure" and "reportedly vomited multiple times with resultant bradycardia and had a cardiac arrest." (DE 40–1, Sealed DOC Letter at 2.) It is also beyond dispute that the DOH Correspondence concerns Plaintiff's rendering of services (or failure to render services) as a medical doctor, since the DOH Letter contains an allegation that Plaintiff, as the Respondent in his capacity as a "Medical Doctor," "may have violated the Medical Practice Act" and the Case Summary cites several possible violations, including practicing medicine below the "Standard of Care." (*Id.* at 1–2.) Hence, the only reasonable conclusion that can be drawn from the DOH documents is that they contain an allegation that the accident resulted from Plaintiff's rendering of services (or failure to render services). Unsurprisingly, Plaintiff has not offered an alternative interpretation of the documents. Based upon the face of the allegations in the DOH documents, therefore, the Court concludes that no reasonable juror would conclude that

the DOH Correspondence did not give notice of an "unexpected accident or injury resulting from the insured's rendering or failure to render services." *See Princeton Express v. DM Ventures USA LLC*, 209 F.Supp.3d 1252, 1255 (S.D. Fla. 2016) ("[I]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." (citation and internal quotation marks omitted)).

Plaintiff's argument that the DOH Correspondence does not constitute notice because the documents do not identify what treatment, if any, was performed by Plaintiff is unavailing. Under Florida law, courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Constr.*, 133 So.3d at 497 (citation omitted). The Prior Notice Exclusion does not require that the notice identify the particular kind of service that caused the injury. Further, Plaintiff has not offered any basis for adding such a requirement to the Prior Notice Exclusion. Looking at the allegations in the DOH Correspondence, and applying the plain language of the Prior Notice Exclusion, the Court concludes, as a matter of law, that the allegations in the DOH Correspondence, which Plaintiff forwarded to Lancet (his prior carrier) through his broker, gave notice of an "unexpected accident or injury resulting from the insured's rendering or failure to render services." (DE 56–8, Physicians Policy, at 14.) Accordingly, the Prior Notice Exclusion applies, and coverage for the V.G. claim is excluded under the Physicians Policy.[8]

## V. CONCLUSION

Based upon the foregoing, the Court concludes that pursuant to the clear and unambiguous terms of the Prior Notice Exclusion in the Physicians Policy, Physicians is not obligated to provide coverage for the claim brought by V.G. arising from the June 10, 2013 incident. Because the Physicians Policy does not afford coverage, Physicians is entitled to summary judgment in this case.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Physicians Casualty Risk Retention Group's Motion for Summary Judgment (DE 54) is **GRANTED**. Defendant Physicians is granted summary judgment as to the breach of contract and declaratory judgment claims against it (Counts II and IV of the Complaint, respectively).

The Court will enter judgment by separate order.

**DONE AND SIGNED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of June, 2017.

---

**8.** Because the Court concludes that the Prior Notice Exclusion applies (since Plaintiff gave notice of an "Occurrence" to Lancet by virtue of the DOH Correspondence), the Court need not consider whether Lancet was given notice by virtue of receiving the patient's attorney's letter requesting certain insurance information from Plaintiff.